**FOR PUBLICATION**

**FILED**

JAMES J. WALDRON, CLERK

**OCT. 16, 2015**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ *Ronnie Plasner*

JUDICIAL ASSISTANT

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>**JAMES H. GIANNINOTO aka JAMES GIANNINOTO aka JAMES HALL GIANNINOTO,**<br><br>Debtor. | Case No.:      14-35883 (JKS)<br><br>Judge:      Hon. John K. Sherwood<br><br>Chapter:      7 |
| **JOHN W. SYWILOK,**<br><br>Plaintiff,<br>**v.**<br><br>**INTERNAL REVENUE SERVICE, STATE OF NEW JERSEY, JP MORGAN CHASE, NA, and WENDY P. GIANNINOTO,**<br><br>Defendants. | Adv. Pro. No. 15-01195 (JKS) |

**OPINION**

**APPEARANCES**:

Kopelman & Kopelman LLP
Michael S. Kopelman, Esq.
55 Main Street
Hackensack, New Jersey 07601
***Counsel for Plaintiff,***
***John W. Sywilok, Chapter 7 Trustee***

Buckley Madole, P.C.
Richard P. Haber, Esq.
99 Wood Avenue South, Suite 803
Iselin, New Jersey 08830
***Co-Counsel for Defendant,***
***JPMorgan Chase Bank, N.A.***

Fidelity National Law Group
David A. Niles, Esq.
105 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
***Co-Counsel for Defendant,***
***JPMortgan Chase Bank, N.A.***

Gardy & Notis, LLP
James H. Gianninoto, Esq.
560 Sylvan Avenue, Suite 3085
Englewood Cliffs, New Jersey 07632
***Counsel for Defendant,***
***Wendy P. Gianninoto***

**THE HONORABLE JOHN K. SHERWOOD, BANKRUPTCY JUDGE**

Before the Court is the motion of plaintiff John W. Sywilok, chapter 7 trustee (the "Trustee") of the bankruptcy estate of James H. Gianninoto (the "Debtor"), for partial summary judgment against defendant JP Morgan Chase, NA ("Chase").  The Trustee's motion seeks a declaration that Chase does not have a security interest in the Debtor's property located at 19 Glenwood Road, Upper Saddle River, New Jersey 07458 (the "Property") because it failed to record its mortgage prior to the filing of the Debtor's petition.  Chase has filed cross-motions for summary judgment on counterclaims asserted against the Trustee and cross-claims asserted against the Debtor's wife, Wendy P. Gianninoto.  For the reasons set forth below, the Court will grant the Trustee's motion.  Chase's cross-motion is granted in part and denied in part.  The remaining issues in this adversary proceeding are preserved for trial.

## JURISDICTION

The Court has jurisdiction over the motions pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 as amended September 18, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).  Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

## FACTS AND PROCEDURAL HISTORY

The Debtor and his wife, Wendy P. Gianninoto ("Mrs. Gianninoto"), acquired title to the Property as tenants by the entirety on August 20, 1993.  (Mrs. Gianninoto's Supp. Stmt. of Facts at ¶¶ 5-6, ECF No. 33).  The Debtor and Mrs. Gianninoto remain married and continue to live in

the Property.  On December 5, 2007, the Debtor refinanced the mortgage on the Property by obtaining a loan in the amount of $890,000 from Washington Mutual Bank ("Washington Mutual"), which was memorialized by a note due from the Debtor alone (the "Note") but secured by a mortgage from both the Debtor and Mrs. Gianninoto (the "Mortgage").  (Chase's Am. Answer, Counterclaims, and Cross-Claims ("Chase's Am. Answer") at 10, ¶¶ 5-6, ECF No. 24-1).  Mrs. Gianninoto asserts that she did not intend to encumber her interest in the Property and that she only signed the Mortgage to acknowledge that the Debtor was encumbering his interest in the Property.  (Mrs. Gianninoto's Supp. Stmt. of Facts at ¶¶ 39-40).   Chase is the successor-in-interest on the Note and Mortgage by purchase from the Federal Deposit Insurance Corporation as receiver of Washington Mutual.  (Chase's Am. Answer at 10, ¶ 5).

One of the main reasons this matter is before the Court is that, for unknown reasons, the Mortgage was never recorded and is now presumed lost.  (*Id.* at 10, ¶ 9).  Before the Debtor filed his bankruptcy case, Chase took actions to remedy this problem through filings with the county clerk and ultimately by bringing suit in state court.  The effectiveness of Chase's corrective actions (described below) is a key issue, and possibly an issue of first impression.

On May 6, 2013, apparently having realized that the Mortgage acquired from Washington Mutual was not recorded, Chase filed a "notice of settlement" against the Property pursuant to New Jersey's Notice of Settlement Act, N.J.S.A. 46:26A-11. (*See* Cert. of Michael S. Kopelman in Opp'n to Cross-Motion for Summ. J. ("Kopelman Cert."), Ex. A, ECF No. 31).  The statute allows a party to a real estate transaction to record a notice of settlement to protect its anticipated interest in property (as owner or mortgagee) against intervening liens created between the time the notice is filed and when the deed or mortgage is actually recorded.  Provided that the underlying interest is properly recorded within the effective period described in the statute (60

days, subject to one potential extension of an additional 60 days), it has priority over subsequent liens. *See* N.J.S.A. 46:26A-11(d), (f).

On June 26, 2014, counsel for Chase sent a letter addressed to the Debtor and Mrs. Gianninoto advising them that the Mortgage was not recorded and requesting that they execute a replacement mortgage. (Cert. of Mrs. Gianninoto in Opp'n to Cross-Mot., at ¶¶ 37-39, ECF No. 34-1). The letter referenced a "Document Correction Agreement" allegedly executed by the homeowners in connection with the original loan. (*Id.,* Ex. E, ECF No. 34-4). Shortly thereafter, the Debtor requested a copy of the Document Correction Agreement and that Chase specifically identify the errors or inaccuracies it was seeking to correct with the replacement mortgage. (*Id.* at ¶ 39). On June 30, 2014, Chase recorded a second notice of settlement with respect to the Property. (Kopelman Cert., Ex. B, 31-3). This was necessary because the first notice of settlement was filed more than a year prior and had expired.

On September 5, 2014, counsel for Chase responded to the Debtor's request by sending a letter and enclosing a copy of an "Occupancy, Misrepresentation and Nondisclosure Affidavit and Agreement," which provided, in relevant part:

> [I]f as a result of a clerical error, omission or other mistake, corrections need to be made to my loan documentation or any additional documents that may be required to enable Lender to sell to a government agency or other Investor, upon the request of the Lender or the Closing Agent, I shall, as applicable: i) authorize Lender or Closing Agent to make correction(s) and indicate on the modified document that a correction was made; (ii) initial any correction(s) made to any loan documentation; and (iii) re-execute corrected loan documentation.

(Cert. of Mrs. Gianninoto in Opp'n to Cross-Mot., Ex. F, ECF No. 34-4).[1]    The letter also renewed Chase's request that the Debtor and Mrs. Gianninoto execute a replacement mortgage.

---

[1] Although the letters from Chase were addressed to both the Debtor and Ms. Gianninoto, only the Debtor signed the Occupancy, Misrepresentation and Nondisclosure Affidavit and Agreement.

(Mrs. Gianninoto's Supp. Stmt. of Facts at ¶ 72).  The homeowners did not comply with this request and Chase filed a third notice of settlement with respect to the Property on October 14, 2014.  (Chase's Am. Answer at 10, ¶ 11; Kopelman Cert., Ex. C., ECF No. 31-4).   On December 19, 2014, Chase recorded a fourth notice of settlement. (Kopelman Cert., Ex. D, ECF No. 31-5).

By late 2014, it either was or should have been apparent that the Debtor and Mrs. Gianninoto were not going to voluntarily fix the problem with the Mortgage that Chase inherited from Washington Mutual.  Thus, on December 22, 2014, Chase filed a lawsuit in the Superior Court of New Jersey, Chancery Division, Bergen County, captioned *JP Morgan Chase Bank, National Association v. James H. Gianninoto, et al.*, Docket No. BER-C-360-14 (the "State Court Action"), seeking to quiet title and reform the mortgage to correct the lot number.[2] (Chase's Am. Answer at 10, ¶ 12).  On December 24, 2014, the state court entered an Order to Show Cause requiring the Debtor and his wife to show why an order should not be entered permitting Chase to record a copy of the Mortgage as an original.  (*Id.*).

On December 29, 2014, the Debtor filed his voluntary petition for relief under chapter 7 of the Bankruptcy Code.  (*Id.* at ¶ 15).  The State Court Action was dismissed shortly thereafter without prejudice, subject to reinstatement upon dismissal of the bankruptcy or entry of an order granting Chase relief from the automatic stay.  (Cert. of James H. Gianninoto in Opp'n to Cross-Mot., Ex. D, ECF No. 38-3).

On February 17, 2015, the Trustee filed this adversary proceeding against Chase, Mrs. Gianninoto, the Internal Revenue Service, and the State of New Jersey seeking authority to sell the Property free and clear of their interests pursuant to §§ 363(f) and (h) of the Bankruptcy

---

[2] On page three of the Mortgage, the tax lot is inadvertently referred to as "Lot 12" when the correct lot number is in fact "Lot 13." (Chase Am. Answer at 10, ¶ 7).

Code. (Compl., ECF No. 1).[3]  Count Four of the Trustee's complaint seeks a determination that

the bankruptcy estate's interest in the Property is superior to that of Chase because the Mortgage

is unrecorded and may be avoided pursuant to the Trustee's "strong arm" powers under section

544(a) of the Bankruptcy Code.  (*Id.* at 5-6).

On May 7, 2015, the Trustee filed the motion for summary judgment against Chase.

(Mot. for Summ. J., ECF No. 17).  On May 11, 2015, Chase filed a motion to dismiss the

Debtor's bankruptcy case for a lack of good faith, or in the alternative, for limited stay relief

allowing Chase to continue the State Court Action.  (*In re James H. Gianninoto*, Case No. 14-

35883, ECF No. 29).  The Court entered an order denying Chase's motion without prejudice on

June 2, 2015. (*Id.*, ECF No. 34).

On June 19, 2015, Chase filed an amended answer, counterclaims, and cross-claims

asserting counterclaims against the Trustee and cross-claims against Mrs. Gianninoto, and

seeking declaratory relief allowing Chase to record a copy of the Mortgage. (*See* Chase's Am.

Answer).  Mrs. Gianninoto filed an answer, defenses, and her own cross-claims against Chase on

July 9, 2015.  (Mrs. Gianninoto's Answer, ECF No. 26).  On July 14, 2015, Chase filed its cross-

motion for summary judgment on Counts One through Three of its counterclaims against the

Trustee and on Count Four of its cross-claims against Mrs. Gianninoto.  (Chase's Cross-Mot. for

Summ. J., ECF No. 27).  Mrs. Gianninoto filed an amended answer and cross-claims against

Chase on August 24, 2015.  (Mrs. Gianninoto's Answer and Am. Cross-Claims, ECF No. 45).

The Court heard oral argument on the summary judgment motions by the Trustee and

Chase on September 8, 2015.  Although Mrs. Gianninoto's cross-claims against Chase involve

the enforceability of the Mortgage as to her interest in the Property and were discussed at the

---

[3] The Internal Revenue Service is named as a defendant due to a federal tax lien filed against the Property on April 14, 2014.   The State of New Jersey is named as a defendant due to Certificates of Debt docketed against the Property on July 4, 2013 and March 27, 2014.

hearing, she has not moved for summary judgment with respect to them.  Thus, this Opinion

makes no ruling on the viability of Mrs. Gianninoto's cross-claims except as specifically set

forth below.

## **DISCUSSION**

### I.    **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).[4]  At the summary

judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is

a genuine issue for trial."  *Knauss v. Dwek,* 289 F. Supp. 2d 546, 549 (D.N.J.

2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).  The "mere existence

of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no *genuine* issue

of *material* fact."  *Anderson,* 477 U.S. at 247-48 (emphasis in original).  An issue is genuine if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

at 249.

In determining whether there is a genuine issue of material fact, the court must construe

all facts and inferences in a light most favorable to the non-moving party.  *See Am. Marine Rail*

*NJ, LLC v. City of Bayonne,* 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986)).  Summary judgment is

---

[4] Federal Rule of Civil Procedure 56(c) is made applicable to this adversary proceeding by Federal Rule of
Bankruptcy Procedure 7056.

appropriate where the non-moving party fails to "make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial." *Cardenas v. Massey,* 269 F.3d 251, 254-55 (3d Cir. 2001) (quoting *Celotex Corp v. Catrett,* 477 U.S. 317, 322 (1986).

Here, the Trustee, Chase and Mrs. Gianninoto do not dispute the material facts necessary to render partial summary judgment on the issues that follow.

## II.    The Rights of the Trustee versus Chase

Count Four of the Trustee's complaint seeks declaratory judgment that the Trustee's interest in the Property is superior to that of Chase because a trustee's rights as a bona fide purchaser of real property pursuant to § 544(a)(3) enable him to avoid an unrecorded interest in real property. (Compl. at 5).  Chase's counterclaims seek declaratory judgment that Chase has a valid mortgage on the Property and permission to record a copy of the Mortgage (Count One), to establish an equitable mortgage or equitable lien (Count Two), and to establish the priority of its alleged lien (Count Three).  (Chase's Am. Answer at 12-18).  All of these claims concern the competing claims of the Debtor's bankruptcy estate and Chase against the Property.  They are ripe for summary judgment and will be analyzed together.

Essentially, this case pits Chase's lien rights under New Jersey's Notice of Settlement Act against the Trustee's rights and powers under § 544(a) of the Bankruptcy Code.  Section 544(a) provides:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

    (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

    (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

    (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a).

The Trustee places heavy reliance on his status as a hypothetical bona fide purchaser of real property under § 544(a)(3). A trustee's rights as a bona fide purchaser are determined according to state law. *In re Bridge*, 18 F.3d 195, 200 (3d Cir. 1994) ("[A]lthough the trustee's strong arm powers arise under federal law, the scope of these avoidance powers vis-à-vis third parties is governed entirely by the substantive law of the state in which the property in question is located as of the bankruptcy petition's filing."); *Matter of Elin*, 20 B.R. 1012, 1018 (D.N.J. 1982) ("[T]he trustee's rights as against a prior transferee of the debtor's real property must be measured under the applicable state law."). In New Jersey, a bona fide purchaser of real property is deemed to have notice of whatever a reasonable title search would reveal. *Musolino v. Orr*, No. 14-514 FLW, 2014 WL 3528417 at *5 (D.N.J. July 16, 2014) ("Bona fide purchasers will be charged with knowledge of whatever a reasonable search would uncover, e.g., facts 'to apprise him of the existence of an outstanding title or claim.'"); *Friendship Manor, Inc. v. Grieman*, 244 N.J. Super. 104, 108, 581 A.2d 893, 895 (App. Div. 1990) ("[C]onstructive notice

arises from the obligation of a claimant of a property interest to make a reasonable and diligent inquiry as to existing claims or rights in and to real estate."); *Palamarg Realty Co. v. Rehac*, 80 N.J. 446, 456, 404 A.2d 21, 26 (1979) ("[T]he subsequent purchaser will be bound only by those instruments which can be discovered by a 'reasonable' search of the particular chain of title.")

Whether the Trustee qualifies as a bona fide purchaser in this case depends on whether the December 19 notice of settlement provided constructive notice of the Mortgage.   The overwhelming evidence suggests that constructive notice of the Mortgage did exist on the petition date.   At oral argument, the Trustee acknowledged that a notice of settlement was duly recorded with respect to the Property ten days prior to the petition date. (*See* Sept. 8 Hrg. Tr. at 77:6-9, ECF No. 53).   Indeed, a title search performed by the Debtor on December 30, 2014, the day after the petition was filed, reveals the December 19 notice of settlement (as well as the previous three notices filed by Chase).   (Cert. of James H. Gianninoto in Opp'n to Cross-Mot., Ex. E).   Thus, a hypothetical purchaser on the petition date would have had notice of an alleged mortgage by Chase against the Property.   This was not the type of "secret lien" or other undisclosed interest from which bona fide purchasers deserve protection.   *See In re Canney*, 284 F.3d 362, 374 (2d Cir. 2002) ("The purpose of the 'strong arm clause' is to cut off unperfected security interests, secret liens and undisclosed prepetition claims against the debtor's property as of the commencement of the case.").

The Trustee asserts that he should not be charged with constructive notice of the Mortgage because the December 19 notice of settlement was the fourth filed by Chase in connection with the same mortgage transaction and only one notice of settlement (and one extension) may be filed with respect to a real estate settlement.   Since only one notice of settlement may be recorded, the Trustee asserts that the December 19 notice is "void" and

therefore incapable of providing constructive notice of the Mortgage.  (Trustee's Mem. of Law in Opp'n to Cross-Mot. at 3, ECF No. 31-6).

This argument is not persuasive under New Jersey law.  First, the Trustee does not cite any authority holding that only a single notice of settlement may be filed with respect to the same real estate transaction.  Second, as set forth above, a bona fide purchaser under New Jersey law is charged with knowledge of whatever a reasonable search would uncover.  In this case, it is largely undisputed that such a search would have revealed that Chase was asserting and attempting to perfect its Mortgage against the Property.  Whether Chase's notice of settlement was valid or not under New Jersey law is not the issue for the purpose of bona fide purchaser status under § 544(a)(3).  In a summary judgment context, the Trustee must be deemed to have had constructive notice of Chase's alleged Mortgage against the Property.  Thus, his status as a bona fide purchaser under § 544(a)(3) did not trump Chase's claim to a mortgage against the property.

But this does not end the inquiry.  What were Chase's lien rights against the Property under the Notice of Settlement Act?  N.J.S.A. 46:26A-11 was enacted to protect purchasers and mortgagees against liens created during the period between the closing of title and the recording of the mortgage and/or deed. *See Natale v. Santos*, No. A-5865-04T2, 2006 WL 1517988 at * 2 (N.J. Super. Ct. App. Div. May 19, 2006) ("The legislative history of the Act consistently indicates that it was intended to protect prospective buyers or mortgagees from obtaining deficient title as a result of intervening liens imposed 'between the closing of title and the recording of the deed or mortgage.'") (quoting Senate Judiciary Committee, *Statement on Senate Bill No. 3169* (Sept. 10, 1979)); *see also Mezey v. United Jersey Bank/Central, N.A.*, 254 N.J. Super. 19, 26, 603 A.2d 49, 53 (App. Div. 1992); *Tobar Const. Co. v. R.C.P. Associates*, 293

N.J. Super. 409, 413, 680 A.2d 1121, 1123 (App. Div. 1996).   If a notice of settlement is recorded, the interest described in the notice takes priority over any subsequently recorded lien or conveyance, provided that the underlying instrument (deed or mortgage) is recorded within the 60-day period in which the notice is effective.   N.J.S.A. 46:26-A11(f) ("Any person who claims an interest in or lien on the real property described in the notice of settlement arising during that time that a notice of settlement is effective shall be deemed to have acquired the interest or lien with knowledge of the anticipated settlement and shall be subject to the estate or interest created by the deed or mortgage described in the notice of settlement *provided the deed or mortgage is recorded within the time that the notice is effective*.") (emphasis added).   The statute provides that the time period for filing the underlying instrument may be extended once, for an additional 60 days, by filing another notice of settlement prior to the expiration of the initial period.   *Id.* at 46:26-A11(d).

In *Natale v. Santos*, *supra*, the sellers entered into a contract to sell their home to a purchaser on September 1, 2001, with the closing scheduled for October 26 of that year.   2006 WL 1417988 at * 2.   The purchaser filed a notice of settlement on October 3, 2001.   Two days later, on October 5, the sellers obtained a second mortgage on their home, which was recorded on October 24, 2001.   Although the closing took place as scheduled, the purchaser did not record his deed until February 12, 2002, well beyond the effective period of the notice of settlement. Upon receiving notice of the existence of the second mortgage (and that it was in default), the purchaser filed an order to show cause seeking to enjoin the second mortgagee from foreclosing on its lien.   *Id.*   The purchaser argued that the notice of settlement gave constructive notice of his deed, notwithstanding the fact that he failed to record it within the statutory period.   Despite the fact that the notice of settlement was properly filed and the transaction closed, the Appellate

Division held that the second mortgage had priority over the purchaser's interest because the purchaser failed to record his deed within the effective period of the notice of settlement. *Id.* at *1 ("[P]laintiff was ineligible for the Act's protections against intervening lienors because he had failed to record his deed of purchase within forty-five[5] days after filing the Notice of Settlement.").

Thus, the language of the Notice of Settlement Act, its legislative history, and the *Natale v. Santos* decision make it clear that the lien rights granted by the filing of a notice of settlement are worthless unless the transaction is closed and the underlying instrument is recorded within the effective period of the notice.  In other words, the lien rights provided by the Notice of Settlement Act have an expiration date—which is strictly enforced.  Here, there is no dispute that Chase failed to record its Mortgage within the 60-day period following the December 19 notice of settlement, and the Debtor's intervening bankruptcy prevented Chase from seeking an extension of that period or filing additional notices of settlement.  Because Chase's lien rights evaporated upon the expiration of the effective period of the December 19 notice, the Trustee's rights as a bona fide purchaser under § 544(a)(3) and a judicial lienholder under § 544(a)(1) render his interest in the Property superior to that of Chase.

While Chase acknowledges that its Mortgage defeats the Trustee only if it is recorded within the effective period of the December 19 notice, it argues that because the automatic stay has prevented it from proceeding in state court and obtaining the relief necessary to record a copy of the Mortgage, the Trustee's interest remains subject to the Mortgage "provided same is recorded during the 50-day period immediately following the termination of the automatic stay (i.e., the remainder of the 60-day period that [was] not exhausted pre-petition)." (Chase Mem. of Law in Supp. of Cross-Mot. at 12, ECF No. 27-3).  Essentially, Chase suggests that the strict 60-

---

[5] The original version of the Notice of Settlement Act, N.J.S.A. 46:22-1, provided for an effective period of 45 days.

day time period set forth in the Notice of Settlement Act is relaxed or tolled when the automatic

stay goes into effect.  Chase argues that the purpose of the automatic stay is to preserve the status

quo, which is true, but the status quo in this case was that Chase's notice of settlement was set to

expire on February 17, 2015.   None of the cases cited by Chase supports the argument that § 362

of the Bankruptcy Code would (or should) operate to extend this period.

While there are situations where bankruptcy law specifically provides for the extension of

limitations periods or the post-petition perfection of security interests, no such law applies under

the circumstances here.  For example, § 108 of the Bankruptcy Code provides for the tolling of

the period for commencement of certain creditor claims stayed by § 362.   Section 108(c)

provides:

> Except as provided in section 524 of this title, if applicable
> nonbankruptcy law, an order entered in a nonbankruptcy
> proceeding, or an agreement fixes a period for commencing or
> continuing a civil action in a court other than a bankruptcy court on
> a claim against the debtor, or against an individual with respect to
> which such individual is protected under section 1201 or 1301 of
> this title, and such period has not expired before the date of the
> filing of the petition, then such period does not expire until the later
> of—
>
> (1) the end of such period, including any suspension of such period
> occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay
> under section 362, 922, 1201, or 1301 of this title, as the case may
> be, with respect to such claim.

11 U.S.C. § 108(c).  This provision is not applicable because it applies to statutes of limitations

for filing civil actions against a debtor.  *See In re Taylor*, 81 F.3d 20, 22 (3d Cir. 1996) ("Section

108(c) of the Bankruptcy Code suspends the limitations periods of certain nonbankruptcy

statutes which create claims against a debtor in bankruptcy."); *In re Brickley*, 70 B.R. 113, 115

(B.A.P. 9th Cir. 1986) ("This section extends the statute of limitations for creditors in actions

against the debtor, where the creditor is hampered from proceeding outside the bankruptcy court due to the provisions of 11 U.S.C. § 362.").  The 60-day time period for recording a deed or mortgage after the filing of a notice of settlement is not tolled because it is not a limitations period for "commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor." 11 U.S.C. § 108(c); *see also Collier on Bankruptcy* ¶ 108.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (section 108(c) "does not appear to apply to other types of acts against the debtor or codebtor that do not involve litigation, such as the filing of documents other than in court proceedings.").

Also, § 546(b) of the Bankruptcy Code provides a creditor that has lien rights in estate property with the means to maintain and continue those rights post-petition. *See* 11 U.S.C. § 546(b)(2).  If maintenance of those rights requires seizure of the property or commencement of an action by a date certain for the lien rights to be preserved, a timely notice in the bankruptcy case is deemed an effective substitute. *Id.*  And, § 362(b)(3) of the Bankruptcy Code specifically recognizes that a creditor may exercise its lien protection rights under § 546(b) without violating the automatic stay.

Chase has not sought to implement either § 108(c) or § 546(b), probably because neither applies here.  The Notice of Settlement Act does not require the commencement of an action or the seizure of property for a lien to relate back to the notice date.  It does require that the anticipated transaction close and that the deed or mortgage be recorded before the expiration of the effective period of the notice.  Thus, notices of settlement are widely used in consensual real estate transactions between willing buyers, sellers, and mortgage lenders.  This was certainly not such a transaction.  The fact that Chase needed to litigate in order to record a copy of the Mortgage makes it clear that this is not the kind of situation that N.J.S.A. 46:26A-11 was

designed to address.  As noted, the statute protects prospective parties to consensual real estate transactions against liens imposed between the filing of the notice of settlement and the recording of the mortgage or deed.  Here, however, the real estate settlement took place over seven years ago and there is no original mortgage to record.  After the Debtor and Mrs. Gianninoto refused to record a replacement mortgage within the effective periods of the first three notices of settlement, it was clear that this was not a consensual real estate transaction and that litigation would be required to compel the homeowners to record a copy of the Mortgage.  In a litigation context, Chase could have used New Jersey's lis pendens statute, N.J.S.A. 2A:15-7, to preserve the ability to perfect its disputed lien against the Property without the time constraints present under the notice of settlement statute.  *See Manzo v. Shawmut Bank, N.A.*, 291 N.J. Super. 194, 202, 677 A.2d 224, 228 (App. Div. 1996) ("the notice of *lis pendens* affects any party who obtains an interest in the property during the effective term of the notice and until the final resolution of the litigation"); *see also* N.J.S.A. 2A:15-11 (the effective period of a lis pendens is five years after the date it is filed filing). Chase's use of the notices of settlement was a creative and efficient method of unilaterally staking a lien claim against the Property while trying to resolve its issues with the Debtor and Mrs. Gianninoto.  But the lien provided under N.J.S.A. 46:26A-11 has its limitations, notably a limited "shelf life," and thus is a less effective means to assert a lien in an adversarial situation.  Since the Mortgage was not recorded within the effective period of the December 19 notice, Chase's lien rights under state law evaporated, and nothing in § 362 or other bankruptcy law alters this result.  Because the Trustee acquired the rights of a bona fide purchaser of real estate under § 544(a)(3) and a judicial lienholder under § 544(a)(1) of the Bankruptcy Code upon the filing of the petition, the Trustee's claim to the Debtor's interest in the Property is senior to Chase's unrecorded Mortgage.

For the above reasons, summary judgment on Count Four of the complaint is granted and the Trustee may avoid Chase's unrecorded Mortgage with respect to the estate's interest in the Property pursuant to 11 U.S.C. § 544.  Count One of Chase's counterclaims, which seeks a declaration that Chase has a valid mortgage on the Property and authorization to record a copy of the Mortgage is dismissed.  Count Two, which seeks to create an equitable lien in favor of Chase, is dismissed, as even if an equitable lien were created it would not withstand the Trustee's avoidance powers under § 544(a). *See In re L.D. Patella Const. Corp.*, 114 B.R. 53, 58 (Bankr. D.N.J. 1990) ("Equitable liens which are valid under applicable nonbankruptcy law are upheld in bankruptcy unless they are avoidable under one of the trustee's avoiding powers . . . an equitable lien will not be upheld where all available means of perfecting a legal lien were not employed.") (internal citations omitted); *Matter of Einoder*, 55 B.R. 319, 328 (Bankr. N.D. Ill. 1985) ("Only if an equitable lien would be sufficient under applicable state law to survive an attack under § 544(a), and if the facts of the case made the equitable lien invulnerable to attack as preferential under § 547, would an equitable lien be good in bankruptcy.").  Count Three, which seeks to establish the priority of Chase's Mortgage vis-à-vis the Trustee, is also dismissed.

## III.    The Rights of Chase versus Mrs. Gianninoto

Count Four of Chase's cross-claims seeks declaratory judgment that the Mortgage is enforceable as to Mrs. Gianninoto because even an unrecorded mortgage is valid between the parties that sign it.[6]  Although Mrs. Gianninoto admits executing the Mortgage, she asserts that it does not encumber her interest in the Property because she signed it merely to acknowledge

---

[6] *See In re Hannah*, 316 B.R. 57, 62 (Bankr. D.N.J. 2004); *Shaw v. Glen*, 37 N.J. Eq. 32 (N.J. Ch. 1883) (chattel mortgage "was clearly valid, as against the mortgagor, when he made the assignment, notwithstanding it had not been recorded according to law."); *Siligato v. State*, 268 N.J. Super. 21, 28, 632 A.2d 837 (App. Div. 1993) ("The law is well settled that an unrecorded deed is void only as against subsequent purchasers, encumbrancers, and judgment creditors.  It is perfectly efficacious in passing title from grantor to grantee.").

that she was consenting to the Debtor granting a mortgage on his interest in the Property. (Cert. of Mrs. Gianninoto in Opp'n to Cross-Mot., at ¶ 28; Mrs. Gianninoto's Supp. Stmt. of Facts at ¶¶ 39-40).  Additionally, she argues that the Mortgage may not be enforced against her because only the Debtor is liable on the Note and under New Jersey law governing property held in a tenancy by the entirety, creditors of only one spouse may not enforce a debt against entirety property. (Mrs. Gianninoto's Mem. of Law in Opp'n to Cross-Mot. at 20-24, ECF No. 36).

Mrs. Gianninoto's argument that she signed the Mortgage merely to acknowledge that the Debtor was encumbering his interest in the Property is unavailing.  Under the plain terms of the Mortgage, she agreed to pledge her interest in the Property as collateral to secure the Debtor's obligations to Chase.  The Mortgage defines the borrowers thereunder as "James H. Gianninoto and Wendy P. Gianninoto, his wife."  (Cert. of Mrs. Gianninoto in Opp'n to Cross-Mot., Ex. B). Paragraph 13 of the Mortgage states, in relevant part:

> any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument.

(*Id.* at ¶ 13).  Thus, even if Mrs. Gianninoto believed that she was signing the Mortgage only to acknowledge that the Debtor was encumbering his interest in the Property, she is bound by its terms, which clearly provide to the contrary. *Schor v. FMS Fin. Corp.*, 357 N.J. Super. 185, 191, 814 A.2d 1108, 1112 (App. Div. 2002) ("[A] party to a contract 'is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she had a different, secret intention from that outwardly manifested.'") (quoting *Domanske v. Rapid-American Corp.*, 330 N.J. Super. 241, 246, 749 A.2d 399 (2000)).

Additionally, Mrs. Gianninoto does not cite any authority to support the proposition that a co-signer on a mortgage must be liable on the underlying debt in order for the mortgage to be enforced against the co-signer's interest in the property, and case law addressing this issue holds to the contrary.  *See U.S. Bank Nat. Ass'n v. Thomas*, No. A-3640-08T2, 2010 WL 1029872 at *2 (N.J. Super. Ct. App. Div. Mar. 23, 2010) ("[I]t is immaterial to this mortgage foreclosure action that the husband did not co-sign the promissory note with his wife. It is undisputed that both spouses signed the mortgage, which provided the security upon which the lender agreed to advance $340,000 . . . under the applicable law and the clear terms of the mortgage itself, the mortgage is effective over the property described in the instrument."); *see also* Myron C. Weinstein, *29 N.J. Prac., Law of Mortgages* § 5.2 (2d ed. 2014) ("With respect to land held in some form of co-tenancy and mortgaged, if all the co-tenants join in the mortgage, the mortgagee's security interest binds the undivided interests of all the co-tenants, whether they are tenants in common, joint tenants, or tenants by the entirety.").

Mrs. Gianninoto's argument that her interest is not subject to the Mortgage because creditors of only one spouse cannot access property held in a tenancy by the entirety is also without merit.  At oral argument, Mrs. Gianninoto relied on *Citizens First National Bank of Ridgewood v. Grull*, 122 N.J. Super. 562, 565, 301 A.2d 172, 174 (Ch. Div. 1973).  In that case, a judgment creditor of only the husband sought to resume a foreclosure action (which had been abandoned by the plaintiff/mortgagee) against entirety property pursuant to New Jersey Rule of Court 4:64-4, which allows a junior lienholder to pick up a foreclosure action following abandonment in order to avoid prejudicial delay.[7]  *Grull*, 122 N.J. Super. at 562.  The court

---

[7] New Jersey Rule of Court 4:64-4 provides: "[i]f the plaintiff makes prior or subsequent encumbrancers parties to the action to foreclose a mortgage, and they answer, and the plaintiff neglects or refuses to proceed, the defendants, or any of them, may make application to the court for an order permitting them to proceed with the action to judgment and execution. Plaintiff by such order shall not be allowed costs."

exercised its discretion under the rule to prevent the judgment creditor from proceeding with the foreclosure to execution and sale.  The court noted that while New Jersey law permits a judgment creditor of only one spouse to execute on that spouse's interest in the property, subject to the right of survivorship, it does not allow such a creditor to compel a sale of the entire property, which would destroy the other spouse's right of survivorship.  *Id.* at 569-70; *see also Vander Weert v. Vander Weert*, 304 N.J. Super. 339, 345-46, 700 A.2d 894, 897 (App. Div. 1997) ("Since the right of survivorship is unilaterally alienable, it is that right, together with the life estate for joint lives, that is subject to execution by a judgment creditor of one but not both of the spouses.").  In reaching its holding, the court highlighted the difference between a mortgagee and a judgment creditor of only one spouse, noting that the latter situation results in unfairness to the non-debtor spouse by depriving him or her of the protections of the tenancy by the entirety without consent.  *Grull*, 122 N.J. Super. at 570.  On the other hand, in a mortgage context, "both husband and wife as mortgagors executing a mortgage must understand and consent that their respective interests may be cut off by a foreclosure and sale of the realty in the event of a default." *Id.*  The court refused to allow the judgment creditor to use a procedural rule to enhance its substantive rights by stepping into the shoes of the mortgagee, which would have been able to proceed to foreclosure and sale because its interest was obtained with the consent of both spouses.  *Id.*  Mrs. Gianninoto's reliance on *Citizens First National Bank of Ridgewood v. Grull* is misplaced because this case does not involve a judgment creditor of one spouse but a mortgagee whose security interest in the entirety property was obtained with her consent.

Thus, assuming no valid defenses to the enforceability of the Mortgage exist, Chase's Mortgage has priority over Mrs. Gianninoto's interest in the Property, and partial summary judgment is granted on Count Four of Chase's cross-claims.

**IV.     Mrs. Gianninoto's Cross-Claims versus Chase**

Among other things, Mrs. Gianninoto's cross-claims against Chase seek declaratory judgment that the Mortgage is unenforceable because the Note executed by the Debtor and a rider to the Mortgage that was executed by both the Debtor and Mrs. Gianninoto contain misleading statements in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* and the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (*See* Mrs. Gianninoto's Answer and Am. Cross-Claims at 23-24, ¶¶ 70-80).

Although these claims were discussed at the September 8 hearing and briefly addressed in Chase's reply brief in support of its cross-motion for summary judgment, Chase has not yet filed a formal answer or asserted defenses to these claims.  Moreover, Mrs. Gianninoto did not move for summary judgment with respect to them.  It is not clear whether the Court has jurisdiction over these claims or whether they may preclude enforceability of the Mortgage. Accordingly, these issues and claims are fully preserved for trial.

## CONCLUSION

The Trustee's motion for summary judgment on Count Four of the complaint is granted and the Trustee may avoid the Mortgage with respect to the Debtor's interest in the Property pursuant to 11 U.S.C. § 544.  Counts One, Two, and Three of Chase's counterclaims against the Trustee are dismissed.  To the extent it seeks a determination that Chase's Mortgage interest in the Property is enforceable against Ms. Gianninoto, partial summary judgment on Count Four of Chase's cross-motion is granted.  This Opinion makes no ruling on any of the cross-claims

asserted by Ms. Gianninoto against Chase or on the merits of any defenses available to Ms. Gianninoto that may preclude enforceability of the Mortgage against her interest in the Property.

An order in conformance with this Opinion will be entered.

Very truly yours,

*s/ John K. Sherwood*

JOHN K. SHERWOOD
UNITED STATES BANKRUPTCY JUDGE

Dated:   October 16, 2015